Case 4:14-cv-03052 Document 46 Filed in TXSD on 03/03/16 Page 1 of 18

United States District Court
Southern District of Texas
**ENTERED**
March 03, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WEN LIU and HO YIN LAM, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-14-3052 |
| | § | |
| LORETTA LYNCH, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Wen Liu and Ho Yin Lam, the plaintiffs, sued the United States Attorney General, the Secretary of the Department of Homeland Security, and five others (together, "the government"). Liu and Lam alleged that the Board of Immigration Appeals ("BIA") decision upholding the denial by the United States Citizenship and Immigration Services ("USCIS") of the I-130 petition Lam filed on Liu's behalf was arbitrary and capricious. Liu and Lam sought a declaratory judgment under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, that Liu is eligible for an adjustment of status. (Docket Entry No. 17). The government moved for summary judgment, (Docket Entry No. 30), arguing that Liu had entered into a previous marriage "for the purpose of evading the immigration laws" and that the USCIS was required to deny the I-130 petition as a result. *See* 8 U.S.C. § 1154. Liu and Lam cross-moved for summary judgment, (Docket Entry No. 34), arguing that substantial evidence failed to support the marriage-fraud finding.

Based on the pleadings, the parties' written and oral arguments, the certified administrative record, and the applicable law, this court grants the government's motion for summary judgment and denies Liu's and Lam's cross-motion. Final judgment is entered by separate order. The reasons are explained below.

1

## I. Background

### A. Liu's Marriage to Jimmy Tran

Liu was born in China. (CAR 311).[1] She was married to a Chinese citizen, in China, from 1988 to 2001. (*Id.* at 231). In 2001, Liu entered the United States on a B-1 visa. (CAR2 43–46). Liu met Jimmy Tran in 2002 in the United States. Tran was born in Vietnam and became an American citizen in June 1995. (CAR 304).

A USCIS investigation revealed that Tran was married to two other women when Liu met him. The investigation found, and Tran admitted, that he married Xiao Dan Jiang in 2000 in China and was still married to her when he married Liu. Tran admitted to filing an I-130 petition on Jiang's behalf. The USCIS had approved that petition,[2] and Jiang entered the United States as a conditional resident in October 2001. (CAR 40–41, 277–78, 288).

The investigation also found that while he was still married to Jiang, but before he married Liu, Tran married a second woman in the United States, Wen Qin Zhang. The USCIS investigation found that Tran filed an I-130 petition on Zhang's behalf. That petition is not in the record, and Tran has not admitted to marrying Zhang. (*Id.*). The investigation also found that in the I-130 Tran submitted for Zhang, he stated that he had no prior marriages. (*Id.*).

#### 1. Liu's Affidavit

Liu stated in an affidavit she submitted to the USCIS that she met Tran at a seafood restaurant in Los Angeles in May 2002. (*Id.* at 54). She thought that Tran had "a soft and polite manner," and she felt they "had a connection." (*Id.*). Although Tran was Vietnamese and Liu was

---

[1] Citations to the certified administrative record in the I-130 proceedings are marked "CAR." Citations to the certified administrative record in the I-485 proceedings are marked "CAR2."

[2] The record does not contain a copy of the I-130, but Tran admits that he filed it.

2

Chinese, they were able to communicate in Mandarin. (*Id.*). They went on over ten dates before Tran proposed in June 2002. (*Id.*). Liu asked Tran if he had ever been married; he said he had not. (*Id.*). He proposed at the restaurant where they went on their first date. (*Id.*). She "believe[d] everything he had told me and by that time I was falling in love with him so I accepted his marriage proposal." (*Id.*).

Liu stated that when she married Tran in August 2002, (*id.* at 324), she had no reason to believe he was married to other women, (*id.* at 54). On the marriage certificate, Liu and Tran stated that Liu was a waitress and that they lived together in San Gabriel, California. (*Id.* at 324). In her affidavit Liu stated that she and Tran lived with a roommate, Yang Yang Liu. (*Id.* at 55). "A few weeks" after her marriage to Tran in August 2002, however, Tran "started coming home late . . . [a]nd then one night he stopped coming home." (*Id.*). Liu decided to divorce Tran. She did not file for divorce until December 2003 because she did not know where he was. (*Id.*).

### 2. Tran's Affidavit

Tran also submitted an affidavit to the USCIS. He admitted that he was married to Jiang when he married Liu. He stated that he did not divorce Jiang because she lived in New York and he lived in California. (*Id.* at 40). Tran's affidavit does not mention a prior marriage to Zhang. Tran acknowledged that he "may have lied" to Liu about never having been married. (*Id.*). He stated that he and Liu met at a seafood restaurant, that they were able to communicate in Mandarin, and that he proposed in June 2002. (*Id.*). He met another woman named Theresa in September 2002 and quickly started dating her. (*Id.* at 41). He stated that his marriage with Liu was tumultuous and that he left Liu for Theresa. (*Id.*).

The affidavits do not establish the precise date when Liu and Tran separated. Liu's and Tran's affidavits make clear, however, that they separated shortly after their marriage in August

3

2002.

### 3. The I-130 Petition and the I-485 Application

Liu stated in her affidavit that Tran filed an I-130 petition on her behalf in September 2002, but the petition is not in the record. (*Id.* at 55). Liu stated that this petition was returned on February 13, 2003, but there is no record evidence supporting that assertion. Liu stated that an attorney resubmitted the immigration documents after they were returned, but there is no indication when the attorney did so.

The record does contain an I-130 petition Tran signed on February 6, 2003 and submitted on Liu's behalf.[3] (*Id.* at 294–95). Three other documents were signed on the same day. Liu and Tran signed G-325A forms providing their biographical information, (*id.* at 296–303); Liu signed an I-485 application for adjustment to permanent resident status based on the I-130 petition, (CAR2 97–100); and Tran signed an I-864 form supporting Liu's application, (*id.* at 105–11).

On the I-130 petition, Tran stated that he had no previous marriages and had never filed an I-130 petition. (CAR at 294–95). He disclosed Liu's prior marriage and stated that she was unemployed. (*Id.* at 294). The G-325A forms stated that Liu was a housewife and that neither Liu nor Tran had been previously married. (*Id.* at 296–303).

The I-485 application included an I-864 form signed by Lam Tsan, who stated that he lived with Liu and Tran in San Gabriel, California. (CAR2 116). Tax records attached to the I-864 form showed that Tsan was married and lived in Los Angeles at that time. (*Id.* at 124).

All of the forms Liu and Tran submitted indicated that they lived together in San Gabriel,

---

[3] The government contends that Tran filed the February 2003 I-130 on April 21, 2003. (Docket Entry No. 30 at p. 8). Liu, by contrast, contends that the I-130 was received on April 21, 2003. (Docket Entry No. 34 at p. 8). The I-130 petition in the record is stamped "received" in the bottom right-hand corner and the date April 21, 2003 is typewritten in the upper right-hand corner. (CAR at 294).

California. Liu's affidavit stated that they lived with her friend, Yang Yang Liu, not with Tsan. (CAR 55).

On February 20, 2003, Liu received a "notice of rejection" because she had failed to sign a money order submitted with the documents. (CAR 325). It is unclear whether the notice related to the I-130 petition Tran filed on her behalf or to the I-485 application Liu filed for her own adjustment of status. The notice does not support Liu's allegation that a September 2002 I-130 petition was filed and then rejected, because Liu alleged that the petition was returned on February 13, 2003 and then resubmitted by an attorney.

Liu and Tran filed for divorce in December 2003. The divorce was finalized in June 2004. (CAR 55, 242–43). Although they separated and then divorced, they did not withdraw the I-130 petition or otherwise notify the USCIS that they intended to abandon it. In her affidavit, Liu stated that she never received an interview notice from the USCIS because she had moved, and that the USCIS never interviewed her about the I-130 petition. (*Id.* at 55). Liu claims that she "abandoned" the petition by not attending interviews, although she had no notice of an interview at the time. (Docket Entry No. 34 at p. 10).

In 2005, the Department of Homeland Security began investigating Tran for having filed concurrent I-130 petitions, suspecting marriage fraud. (CAR 277–79).

**B.    Liu's Marriage to Ho Yin Lam and the I-130 Petition He Filed for Liu**

In September 2007, Liu married Lam, a native of Macau who was naturalized as an American citizen in May 2004. (*Id.* at 235–38). In October 2007, Lam filed an I-130 petition on Liu's behalf. (*Id.* at 225–26). Liu submitted a G-325A form stating that she was a housewife who had lived at a number of addresses in Texas, California, and Illinois in the preceding five years. (*Id.* at 231–34). Liu and Lam submitted a lease agreement, (*id.* at 248–51); automobile and life-

5

insurance information, (*id.* at 252–65); Liu's driver's permit, (*id.* at 266); photographs, (*id.* at 270–74); ATM cards, (*id.* at 268–69); and a check from their joint bank account, (*id.* at 267). Liu also filed an I-485 application. (CAR2 32–38). Liu claimed that in April 2003, she had "abandoned" the prior I-485 application, filed after her marriage to Tran. (*Id.* at 33). Lam submitted an I-864 form supporting Liu. (*Id.* at 62–66).

The USCIS interviewed Liu and Lam about the I-130 petition and the I-485 application in March 2008. (*Id.* at 29). Liu and Lam submitted airline tickets they had purchased together, utility bills, phone bills, bank-account statements, and insurance policies. (CAR 97–99, 100–17, 118–221).

On December 18, 2008, in connection with the investigation into Tran's petition history, the USCIS issued a notice of intent to deny the I-130 petition Tran had filed for Liu. (CAR 287–88, 290–91). The notice mentioned Tran's previously filed I-130 petitions and emphasized Tran's statements that he had not previously been married on the I-130 petition he filed for Liu, even though he was married to two other women at that time. (*Id.*). Based on its investigation, the USCIS believed that Tran's "marriage to [Liu] was orchestrated solely to convey immigration benefits," making it a "sham marriage." (*Id.*). The agency gave Tran 30 days to respond to the sham-marriage finding. (*Id.*).

Tran had notice of the deadline but did not respond. Liu and Lam claim that Tran did not respond because he never received the notice and deadline to respond. Tran had moved, but he had not given the USCIS the new address. (Docket Entry No. 34 at p. 13). The USCIS denied both the I-130 petition and the I-485 application, stating that the denial was "based on the allegations discussed in the [notice of intent to deny]," as well as on Liu's and Tran's divorce. (CAR 284).

In January 2009, the USCIS issued a notice of intent to deny the I-130 petition Lam filed on Liu's behalf. (CAR 25–26, 51–52, 94–95). The USCIS stated that Liu's fraudulent marriage to Tran

barred Liu from ever acquiring permanent resident status or citizenship. (*Id.*). The USCIS gave Lam 30 days to submit additional evidence about Liu's marriage to Tran. (*Id.*).

Lam responded in February 2009. (*Id.* at 28). The response included Liu's affidavit, in addition to photographs of Liu and Tran and their bank statements from a joint account. (*Id.* at 29–31, 57–92). The bank statements showed an account with Tran's and Liu's address in San Gabriel, California from August 2002 to February 2003. (*Id.* at 57–68). During that period, the account balance did not go above $1,300. (*Id.*). The March through May 2003 statements do not list an address. (*Id.* at 69–74). The June 2003 statement lists an address in Alhambra, California. (*Id.* at 75). The monthly statements continue at that address through September 2003. (*Id.* at 75–84). The highest account balance during this period was $2,251.18, in August 2003. (*Id.* at 81). There are no bank statements from September 2003 to February 2004. There is a bank statement from March 2004, in which the account balance goes to zero. (*Id.* at 85–88). During the approximately one-and-a-half years when the joint bank account was open, the record shows 16 deposits and 48 withdrawals.[4] (*Id.* at 57–88).

The USCIS denied the I-130 petition on July 13, 2009. (*Id.* at 49–50). The agency stated that Lam had not met his burden to show that Liu was eligible for a visa because "where the record contains evidence that a visa petition was previously filed for an alien based on a fraudulent marriage, the burden shifts to the petitioner to prove that the alien did not seek to be accorded non-quota status based on a prior marriage." (*Id.*). The USCIS noted that Liu's affidavit was not competent evidence because "the beneficiary of a petition is not considered a recognized party in visa proceedings." (*Id.*). The USCIS also denied Liu's I-485 application. (CAR2 2–3).

---

[4] The government asserts that there were 44 withdrawals, but this appears to be a mathematical error. (Docket Entry No. 30 at 13).

Lam appealed to the BIA in August 2009. (CAR 9–46). In his brief, Lam argued that the USCIS had failed to consider the evidence he submitted in response to the notice of intent to deny. (*Id.*). He also submitted additional evidence to the BIA, including Tran's affidavit. (*Id.* at 40–41). In March 2011, the BIA dismissed Lam's appeal. The BIA stated that:

> [T]he record supports a finding that [Liu's] prior marriage was entered into for the purpose of evading the immigration laws. . . .  In this regard, we acknowledge the evidence submitted in response to the [notice of intent to deny], including [Liu's] affidavit indicating that she had been deceived by her former husband, her former husband's affidavit stating he married the beneficiary for love but met someone else, and a few months' worth of bank account statements indicating a joint account between [Liu] and her former husband. However, we must agree that the evidence did not adequately address the concerns raised in the [notice of intent to deny], that is, that [Liu's] former husband was married to several women at once for whom he filed visa petitions, including [Liu]. The petitioner has not satisfactorily explained this substantial and probative evidence of marriage fraud. Thus, . . . 8 U.S.C. § 1154(c), applies in the instant case and serves to bar the approval of the petition filed by [Lam] on [Liu's] behalf.

(*Id.* at 4).

Liu then sued in this court, challenging the BIA's decision. Lam later joined as a plaintiff to address concerns about standing.[5] Liu and Lam argue that the record supports finding that although Tran engaged in marriage fraud, Liu was not complicit, and the USCIS did not produce any evidence showing that Liu herself committed marriage fraud. (Docket Entry No. 17 at p. 6–7).

## II. The Legal Standards

### A. Summary Judgment Under Rule 56

"Summary judgment is required when 'the movant shows that there is no genuine dispute

---

[5] The parties have not addressed the issue of Liu's standing to challenge the denial of the I-130 petition that Lam filed on her behalf. This court has recently held that intended I-130 petition beneficiaries lack standing to contest the denial of the petition. *Olugbenle v. Heathman*, No. 14-cv-3085, 2015 WL 3546996, at *5 (S.D. Tex. June 8, 2015). Because the petitioner, Lam, is also a plaintiff, a finding that Liu lacks standing to challenge the denial of the I-130 Lam filed would not result in the dismissal of this suit. It would, however, result in Liu's dismissal as a plaintiff. Because Lam has standing to sue, it is unnecessary to decide whether Liu also has standing.

as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* (quotation marks omitted); *see also Celotex*, 477 U.S. at 325. Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

"Once the moving party [meets its initial burden], the non-moving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and

admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice*, 783 F.3d at 536 (quoting *EEOC*, 773 F.3d at 694). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary-judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *see also Nola Spice*, 783 F.3d at 536.

When the parties cross-move for summary judgment, the court must review "each motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 110 (5th Cir. 2010) (alteration omitted) (quotation marks omitted).

### B.    Review of Agency Determinations Under the APA

"It is well settled that the applicant for a visa bears the burden of establishing eligibility." *Nat'l Hand Tool Corp. v. Pasquarell*, 889 F.2d 1472, 1475 (5th Cir. 1989). "A denial by the [BIA] of an application for a visa may be reversed only if the decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Id.* (citing 5 U.S.C. § 706(2)(A)). Although the district court's role is to ensure that the BIA engaged in "reasoned decision-making," the agency is "entitled to considerable deference in its interpretation of the governing statute." *Id.* (quotation marks omitted). An agency acts arbitrarily and capriciously if it "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency,

10

or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Brown v. Napolitano*, 391 F. App'x 346, 349 (5th Cir. 2010) (per curiam) (quoting *Tex. Oil & Gas Ass'n v. EPA*, 161 F.3d 923, 933 (5th Cir. 1998)).

Agency action is arbitrary and capricious "only when it is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Wilson v. U.S. Dep't of Agric.*, 991 F.2d 1211, 1215 (5th Cir. 1993) (quotation marks omitted). "The agency decision need only have a rational basis, and it does not have to be a decision which the court would have made." *Id.* In reviewing a challenge to the agency's decision, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Luminant Generation Co., LLC v. EPA*, 714 F.3d 841, 850 (5th Cir. 2013) (alteration omitted) (quotation marks omitted).

The BIA's factual findings are reviewed for substantial evidence, "which requires only that the BIA's decisions be supported by record evidence and be substantially reasonable." *Shaikh v. Holder*, 588 F.3d 861, 863 (5th Cir. 2009) (quotation marks omitted); *see also Brown*, 391 F. App'x at 349–50; *Sajan v. Mukasey*, 257 F. App'x 736, 739 (5th Cir. 2007) (per curiam); *Omagah v. Ashcroft*, 288 F.3d 254, 258 (5th Cir. 2002); *cf. Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1304 (11th Cir. 2015); *Hang Chen v. Holder*, 675 F.3d 100, 106 (1st Cir. 2012); *Emokah v. Mukasey*, 523 F.3d 110, 116 (2d Cir. 2008). A finding of marriage fraud is a factual finding reviewed for substantial evidence. *Brown*, 391 F. App'x at 350; *cf. Akinwande v. Ashcroft*, 380 F.3d 517, 522 (1st Cir. 2004).

### C.     I-130 Petitions

A United States citizen may apply for his or her spouse to obtain lawful permanent residence by filing an I-130 petition with the USCIS. 8 C.F.R. §§ 204.1(a)(1), 204.2(a). The petitioner bears

the burden of proving eligibility and can do so by presenting evidence of a valid marriage. 8 U.S.C. § 1361; *In re Brantigan*, 11 I & N Dec. 493, 495 (BIA 1966). The test for a *bona fide* marriage is whether, at its inception, "the bride and groom intended to establish a life together." *In re Laureano*, 19 I & N Dec. 1, 2–3 (BIA 1983). The petitioner must prove "by a preponderance of the evidence, that [the couple] 'intended to establish a life together at the time of their marriage,' and that their marriage was not entered into with 'the primary purpose of circumventing immigration laws.'" *Brown*, 391 F. App'x at 350 (quoting *In re Pazandeh*, 19 I & N Dec. 884, 887 (BIA 1989); *In re Phillis*, 15 I & N Dec. 385, 386 (BIA 1975)).

If the marriage is *bona fide*, the I-130 petition will be granted. But the USCIS cannot approve an I-130 petition filed on behalf of an alien beneficiary who has "previously been accorded, or has sought to be accorded, immediate relative status" on the basis of a fraudulent marriage. The statute states that:

> [N]o petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c); *see also* 8 C.F.R. § 204.2(a)(1)(ii). "The USCIS must deny a petition if it determines that a marriage is fraudulent." *Brown*, 391 F. App'x at 351; *cf. Offiiong v. Holder*, 864 F. Supp. 2d 611, 618 (S.D. Tex. 2012).

A USCIS District Director determines, on the Attorney General's behalf, whether § 1154(c) applies to a beneficiary. *See Zemeka v. Holder*, 989 F. Supp. 2d 122, 129 (D.D.C. 2013). The government bears the burden of proving marriage fraud under § 1154(c) by showing "substantial and probative" evidence that the couple's marriage "was a sham from its inception." *Brown*, 391

F. App'x at 351; 8 C.F.R. § 204.2(a)(1)(ii).  Substantial evidence is "more than a scintilla, but . . . something less than a preponderance of the evidence."  *Fla. Gas Transmission Co. v. FERC*, 604 F.3d 636, 645 (D.C. Cir. 2010) (quotation marks omitted).

If the USCIS discovers evidence of marriage fraud, the agency must issue a notice of intent to deny informing the petitioner of "the derogatory information" and giving him the opportunity to respond with rebuttal evidence.  8 C.F.R. § 103.2(b)(8)(iv).  The petitioner bears the burden of rebutting the evidence showing marriage fraud.  "The petitioner must establish by clear and convincing evidence that the prior marriage was not entered into for the purpose of evading the immigration laws.  Failure to meet the 'clear and convincing evidence' standard will result in the denial of the petition."  *Id.* § 204.2(a)(1)(i)(C).

### III.    Discussion

#### A.    Whether the Plaintiffs' Challenge to the Sham-Marriage Finding Between Liu and Tran Is Precluded

Liu and Lam challenge the denial of the I-130 petition Lam filed on Liu's behalf.  They do not challenge the denial of the I-130 petition Tran filed on Liu's behalf.

The first issue is whether Liu and Lam may challenge the finding that Liu's marriage to Tran was fraudulent or whether that finding is conclusively established because it was not challenged. Liu claims that she and Tran abandoned, or *de facto* withdrew, the first I-130 petition and I-485 application by failing to attend the scheduled USCIS interviews for those petitions.  But the record contains no evidence suggesting that either Tran or Liu informed the USCIS of an intent to abandon or withdraw either the petition or the application.

Liu's challenge is proper because the USCIS's denial of the I-130 petition did not conclusively establish that Liu's and Tran's marriage was a sham.  The USCIS denied the I-130 petition Tran filed "based on the allegations discussed in the [notice of intent to deny]," that is, the

13

allegations of marriage fraud, as well as Liu's and Tran's divorce. (CAR 284). "[W]here a prior visa petition had been denied based, in part, on evidence that a marriage was entered into to evade immigration laws but where no actual finding had been made of fraudulent marriage, the prior decision [i]s not entitled to conclusive effect. Rather, an independent decision [i]s to be made on a consideration of the entire record . . . ." *Avitan v. Holder*, No. C-10-03288-JCS, 2011 WL 499956, at *11–12 (N.D. Cal. Feb. 8, 2011) (citing *In re Tawfik*, 20 I & N Dec. 166, 170 (BIA 1990)); *see also Zemeka*, 989 F. Supp. 2d at 129.

Because no explicit fraudulent-marriage finding was made when the first I-130 petition was denied, the USCIS was required to consider the entire record and make an independent decision in the later proceeding. Liu and Lam may challenge the resulting decision in this case.

> **B.     Whether Substantial Evidence Supports the Finding that the Government Met Its Burden To Show Marriage Fraud**

The question is whether the BIA's finding that the government met its burden to show by substantial and probative evidence that Liu married Tran "for the purpose of evading the immigration laws" was supported by substantial evidence. *Brown*, 391 F. App'x at 351. The government had to show substantial and probative evidence that Liu and Tran did not intend to establish a life together at the time they married. *Id.* "'Evidence to establish intent could take many forms, including, but not limited to, proof that the beneficiary has been listed as the petitioner's spouse on insurance policies, property leases, income tax forms, or bank accounts; and testimony or other evidence regarding courtship, wedding ceremony, shared residence, and experiences.'" *Id.* (quoting *Laureano*, 19 I & N Dec. at 2). The BIA is "permitted to consider conduct after the marriage, 'but only to the extent that it bears upon their subjective state of mind at the time they were married.'" *Id.* (quoting *Bark v. INS*, 511 F.2d 1200, 1202 (9th Cir. 1975)).

Substantial evidence supports the BIA's conclusion that the government carried its burden

to show marriage fraud. The USCIS investigation revealed that Tran was married to two other women when he married Liu and that he had filed I-130 petitions on their behalf. (CAR 277–79). In the I-130 petition Tran filed on Liu's behalf, he stated that he had never been married. (*Id.* at 294). Tran later submitted an affidavit to the BIA admitting that he was married to Jiang when he married Liu. (*Id.* at 40–41). Tran's and Liu's affidavits stated that they separated very shortly after they were married in August 2002, even though the I-130 petition and the I-485 application were signed in February 2003. (*Id.* at 40–41, 54–56, 295). Neither the petition nor the application was withdrawn after Liu and Tran separated, after Liu filed for divorce, or after Liu's and Tran's divorce was finalized. Although Liu claimed that she could not contact Tran to get a divorce after they separated following their marriage, substantial evidence supports finding that they continued to prepare and file an I-130 petition for Liu despite their separation. The record before the BIA contained bank statements showing minimum account balances and infrequent deposits and withdrawals in a joint bank account. (*Id.* at 57–88). Liu's affidavit identified Yang Yang Liu as an individual who lived with her and Tran as a roommate, while an I-864 form submitted in support of Liu's I-485 application was signed by Lam Tsan, who stated that he lived with the couple, even though his attached tax returns showed that he lived with his wife in Los Angeles. (CAR 55, CAR2 116, 124).

Although there is no direct evidence that Liu entered the marriage to evade the immigration laws, and although there is evidence that Tran lied to Liu about his marriage history, substantial evidence supports the BIA's record-based inference that Liu had the requisite intent. The record before the BIA provided substantial evidence for it to conclude that the government had met its burden to show substantial and probative proof that Liu and Tran married with the intent to evade the immigration laws.

15

Liu and Lam argue that the government did not meet its burden because the notice of intent to deny referred to an investigation by the USCIS that found that Tran was married to both Jiang and Zhang when he married Liu, but the notice did not set out any proof of those marriages or of the I-130 petitions Tran submitted for Jiang and Zhang. The USCIS was not required to present proof in the notice. The applicable regulation, 8 C.F.R. § 103.2(b)(16)(i), requires the USCIS to advise petitioners of "derogatory information" that forms the basis of the denial and to provide "sufficient information to allow the petitioners to rebut the allegations." *Mangwiro v. Johnson*, 554 F. App'x 255, 261 (5th Cir. 2014) (per curiam). The USCIS is not required to provide the petitioner with the documents or evidence supporting or describing the derogatory information. *Id.*

Liu and Lam also argue that to meet its initial burden, the government "would need to have affirmative evidence such as an interview with Tran or Liu in which they admit the marriage was fraudulent, or that Tran was compensated to marry Liu, or that they never really lived together. Or evidence that one was in a relationship while pretending to be married to the other." (Docket Entry No. 34 at p. 28). They have cited no case supporting this evidentiary requirement. Even if the government did have to produce this evidence, the record before the BIA contained Tran's affidavit statement admitting that he was married to another woman when he married Liu. The government submitted evidence that met its initial burden under the standard Liu and Lam advocate.

Liu and Lam rely heavily on *Delcore v. Holder*, No. 13-cv-8266, 2015 WL 1858363 (N.D. Ill. Apr. 20, 2015), a case they say is "remarkably similar" to theirs. (Docket Entry No. 34 at p. 24). In *Delcore*, the government's only evidence of marriage fraud was the intended visa beneficiary's ex-wife's statement that the couple never lived together and the ex-wife's suspicion that the plaintiff married her "to secure a green card." *Id.* at *4–5. The court concluded that the "case comes down to the following: many years after [the intended visa beneficiary] and [his ex-wife] separated, [the

16

intended beneficiary] swore that they had initially lived together for a few months, and [his ex-wife] swore that they never lived together. Two other witnesses . . . support plaintiffs' version, and the documentary evidence is slim and equivocal." *Id.* at *8. The court reasoned that, given the limited record, "[m]erely choosing to believe [the ex-wife] instead of the others does not satisfy the government's burden of identifying substantial and probative evidence that the marriage was fraudulent, and in light of that specific burden of proof, no reasonable person could reach the conclusion reached by the government here." *Id.*

Unlike *Delcore*, the record here contains an uncontested statement by the intended visa beneficiary's ex-husband that when they married he was married to another woman. The USCIS made factual findings that the ex-husband was married to two other women when he married Liu. The record also contains statements from both the intended beneficiary and her ex-husband that they separated shortly after their marriage, even though an I-130 petition and an I-485 application were signed months after their marriage and never withdrawn after they separated and later divorced.

This is not a case in which the government has "merely" chosen to believe Tran's account instead of Liu's. Both Liu's and Tran's affidavits, with other record evidence, substantially support the BIA's finding that the government met its initial burden to show marriage fraud by substantial and probative evidence.

Once the government met its burden, the burden shifted to the petitioner to show "by clear and convincing evidence that the prior marriage was not entered into for the purpose of evading the immigration laws." 8 C.F.R. § 204.2(a)(1)(i)(C). Liu and Lam have not addressed this part of the inquiry in their brief. Even if the argument was not waived, the rebuttal evidence of Tran's and Liu's affidavits, the bank records, and the pictures does not clearly and convincingly rebut the government's marriage-fraud evidence, and there is substantial record evidence to support the BIA's

17

finding that Liu and Lam did not meet their burden to rebut the government's substantial and probative evidence of fraud.

**IV.     Conclusion**

The government's motion for summary judgment is granted. (Docket Entry No. 30). The cross-motion for summary judgment is denied. (Docket Entry No. 34). Final judgment is entered by separate order.

SIGNED on March 3, 2016, at Houston, Texas.

                                                  Lee H. Rosenthal
                                        United States District Judge